

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 6, 2023

**BY ECF**

The Honorable Jennifer L. Rochon
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    *United States v. Christopher Bryan*, 22 Cr. 468 (JLR)

Dear Judge Rochon:

      The Government respectfully submits this letter in advance of the July 13, 2023 sentencing of defendant Christopher Bryan in the above-captioned case. For the reasons set forth below, the Government submits that a sentence between 12 and 18 months' imprisonment would be sufficient, but not greater than necessary, to serve the purposes of sentencing in this case.

### I.    Offense Conduct and Procedural History

      From January 2021 through August 2022, officers from the New York City Police Department (the "NYPD") conducted an investigation into a group of co-conspirators, including Bryan and his co-defendants, selling crack cocaine near the corner of East 194th Street and Marion Avenue in the Bronx, New York. (Presentence Investigation Report, dated June 28, 2023 ("PSR") ¶¶ 12-13). Over the course of the operation, undercover NYPD officers conducted numerous video-recorded purchases of crack cocaine from members of the conspiracy, totaling approximately 42 grams. (*Id.* ¶ 13). NYPD officers also seized approximately 58 grams of crack cocaine during arrests and seizures conducted in connection with the investigation.

      Between July 2021 and April 2022, the defendant was directly involved in at least four sales of crack cocaine to undercover officers, including sales of crack cocaine on July 20, 2021; November 10, 2021; March 18, 2022; and April 15, 2022. (*Id.* ¶ 14). On June 2, 2022, the defendant was arrested by the NYPD following a fifth sale of crack cocaine to an undercover officer. (*Id.* ¶ 15). The defendant was subsequently released from custody and within weeks, he had participated in two additional crack cocaine sales—a sixth sale on June 8, 2022, and a seventh on June 16, 2022. (*Id.*).

      On September 1, 2022, a grand jury returned an indictment (the "Indictment") charging the defendant with conspiring to distribute and possess with intent to distribute 280 grams or more of mixtures and substances containing a detectable amount of crack cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A). (ECF No. 2). The defendant was arrested on those charges

on September 13, 2022. On April 6, 2023, the defendant pleaded guilty, pursuant to a plea agreement (the "Plea Agreement"), to the lesser-included offense of conspiring to distribute and possess with intent to distribute mixtures and substances containing a detectable amount of crack cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C).

## II.     Plea Agreement, Guidelines Calculation, and PSR

In the Plea Agreement, the parties stipulated that, based on an offense level of 21 and a Criminal History Category of I, the defendant's applicable United States Sentencing Guidelines ("Guidelines" or "U.S.S.G") range is 37 to 46 months' imprisonment. The parties calculated the defendant's offense level by applying a base offense level of 24—because the defendant was responsible for conspiring to distribute at least 28 grams, but less than 112 grams, of crack cocaine—and a three-level reduction for acceptance of responsibility. The parties calculated the defendant's Criminal History Category based on an understanding that he had no prior convictions.

The Government also noted in the Plea Agreement that, consistent with Department of Justice policy, the Government would, at sentencing, ask the Court to consider, as part of its 18 U.S.C. § 3553(a) analysis, the Guidelines range for powder cocaine rather than crack cocaine. The Government stated that under the powder cocaine guidelines, the applicable Guidelines range would be 12 to 18 months' imprisonment (the "Stipulated Powder Cocaine Guidelines Range").

In its Presentence Investigation Report, Probation concurs with the parties' computation of the applicable offense level. (PSR ¶¶ 24-34). Probation calculates, however, that the defendant is in Criminal History Category II rather than Criminal History Category I, based on a 2008 conviction in New York County Supreme Court for robbery in the first degree. (*Id.* ¶¶ 36-39).[1] Based on a Criminal History Category of II, Probation calculates the defendant's applicable Guidelines range to be 41 to 51 months' imprisonment.[2] (*Id.* ¶ 72).

After calculating the applicable Guidelines range, Probation recommends a downward variance of 24 months' imprisonment. (*Id.* at 23). Probation notes that this case represents the defendant's sixth known arrest and third conviction, and that the defendant "is a repeat offender who has failed to benefit from a prior term of imprisonment." (*Id.* at 24.) Probation states that the defendant's "decision to commit the instant offense was also not an isolated incident of poor judgement," in that he "knowingly and voluntarily committed the instant on several occasions." (*Id.*) Probation also acknowledges, however, the defendant's history of substance abuse and purported loss of employment in during the pandemic, and it expresses the view that "[i]t is likely that [the defendant's] difficult childhood contributed to his poor choices in life, including his

---

[1] Probation also noted a second conviction in 2009, for criminal possession of a controlled substance in the third degree. Probation determined, however, that the 2009 conviction did not result in any criminal history points. (PSR ¶ 37).

[2] After review of the PSR, the Government concurs with Probation's calculation of the defendant's Criminal History Category. Nevertheless, for the reasons set forth herein, the Government respectfully submits that a sentence within the Stipulated Powder Cocaine Guidelines Range is fair and appropriate in this case.

involvement in the instant offense." (*Id.*) Probation concludes that a sentence of 24 months' imprisonment "adequately considers the mitigation sentencing factors present in this case while still providing just punishment and promoting respect for the law." (*Id.* at 25.)

### III. Applicable Law

The Guidelines still provide important guidance to the Court following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). Indeed, although *Booker* held that the Guidelines are no longer mandatory, it also held that they remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. *Booker*, 543 U.S. at 264. As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

After that calculation, a sentencing judge must consider seven factors outlined in 18 U.S.C. § 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any pertinent policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims." 18 U.S.C. § 3553(a)(1)-(7); *see also Gall*, 552 U.S. at 49-50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

"[I]n the ordinary case, the [U.S. Sentencing] Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *Kimbrough v. United States*, 552 U.S. 85, 109 (2007) (quoting *Rita v. United States*, 551 U.S. 338, 350 (2007)); *see also United States v. Bryant*, 976 F.3d 165, 181 (2d Cir. 2020) ("In the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." (quoting *United States v. Fernandez*, 443 F.3d 19, 27 (2d Cir. 2006))).

Page 4

## IV. Discussion

On December 16, 2022, the Department of Justice issued a new policy regarding charging, pleas, and sentencing in drug cases (the "Drug Cases Memo"). In order to eliminate the crack-to-powder cocaine sentencing disparity, and pursuant to the Drug Cases Memo, at sentencing in crack cocaine cases, prosecutors "should advocate for a sentence consistent with the guidelines for powder cocaine rather than crack cocaine," and "[w]here a court concludes that the crack cocaine guidelines apply, prosecutors should generally support a variance to the guidelines range that would apply to the comparable quantity of powder cocaine."

Accordingly, although the PSR accurately reflects the defendant's Guidelines range, the Government respectfully requests that the Court sentence the defendant consistent with the Guidelines range for powder cocaine stipulated to in the Plea Agreement. Here, the defendant would be responsible for at least 100 grams, but less than 200 grams, of powder cocaine, which results in a base offense level of 16. *See* U.S.S.G. § 2D1.1(c)(12). With a three-level reduction for acceptance of responsibility, and the Criminal History Category of I stipulated to in the Plea Agreement, the defendant's Guidelines range would be 12 to 18 months.[3] A sentence within that range is appropriate based on, among other factors, the nature and circumstances of the offense; the history and characteristics of the defendant; and the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to afford adequate deterrence.

The Government does not dispute that there are mitigating aspects of the defendant's background and conduct that the Court should consider. The PSR and defense submission reflect that the defendant's childhood was a difficult one; that the defendant has suffered from substance abuse issues in the past; that the defendant had some success, though also some setbacks, while on pretrial release; and that the defendant has previously had gainful, productive employment.

Nevertheless, as Probation notes, this is not the defendant's first conviction—nor even his first drug-related conviction—and his involvement in the charged conspiracy was not limited to a single, isolated instance. Rather, the defendant was involved in at least seven different sales to undercover officers over many months, two of which occurred within weeks of being arrested by the NYPD for selling crack. This is a troubling pattern of behavior.

Balancing these considerations, the Government respectfully submits that a sentence within the Stipulated Powder Cocaine Guidelines Range of 12 to 18 months' imprisonment would be sufficient, but not greater than necessary, to achieve the objectives of Section 3553(a).

---

[3] If the Court instead applies a Criminal History Category of II, as calculated by Probation, the defendant's powder cocaine Guidelines range is 15 to 21 months' imprisonment.

## V. Conclusion

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence within the Stipulated Powder Cocaine Guidelines Range of 12 to 18 months' imprisonment.

                                  Respectfully submitted,

                                  DAMIAN WILLIAMS
                                  United States Attorney

By:   /s/
       Jonathan L. Bodansky
       Thomas S. Burnett
       Assistant United States Attorneys
       (212) 637-2385 / -1064

cc: Carla M. Sanderson, Esq.